UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FITBIT INC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ALIPHCOM, et al.,<br><br>　　　　　Defendants. | Case No. 16-cv-00118-BLF<br><br>**ORDER DENYING MOTION TO STAY**<br>[Re: ECF 65] |

Before the Court is Defendant Aliphcom, Inc., d/b/a Jawbone ("Jawbone")'s motion to stay all proceedings in this action until the final resolution of *Certain Wearable Activity Tracking Devices, Systems, and Components Thereof*, Investigation No. 337-TA-937 (Nov. 2, 2015) (the "ITC Action"), currently before the International Trade Commission. For the reasons set forth below, the Court DENIES Jawbone's motion.

I. **BACKGROUND**

Separate from the ITC Action, Plaintiff Fitbit, Inc. ("Fitbit") sued Jawbone in two Delaware cases, *Fitbit v. Jawbone* (D. Del. 15-cv-775) and *Fitbit v. Jawbone* (D. Del. 15-cv-0990), and another case in this District, *Fitbit v. Jawbone* (N.D. Cal 15-cv-4073), alleging infringement of patents relating to wearable devices. Mot. 2-3. Jawbone then moved to transfer the two Delaware cases to this District. *Id.* at 3. The Delaware district court granted the transfer of *Fitbit v. Jawbone* (D. Del. 15-cv-775) to this District, which is now the present action before this Court. As for *Fitbit v. Jawbone* (D. Del. 15-cv-0990), the court stayed the case pursuant to 28 U.S.C. section 1659 because the three patents implicated in that case are exactly the same patents in the ITC Action. *Id.* at 2-3. Accordingly, the motion to transfer was held in abeyance. *Id.* at 4. After the present case was transferred to this District, Jawbone designated it as related to *Fitbit v.*

1  *Jawbone* (N.D. Cal 15-cv-4073) but the judge there declined to designate these cases as related. *Id.* at 4 n.3.  Jawbone now moves to stay proceedings until the final resolution of the ITC Action. The hearing before the ITC Action was completed in August 2016 and the administrative law judge is expected to issue an initial determination in December 2016, with a target completion date of April 7, 2017.  Opp. 8; ITC Action (Procedural History).

In the present case, Fitbit alleges that Jawbone infringes the following three patents – U.S. Patent No. 8,909,543 ("the '543 patent"), U.S. Patent No. 9,031,812 ("the '812 patent"), and U.S. Patent No. 9,042,971 ("the '971 patent").  The ITC Action involves a different set of patents – U.S. Patent No. 8,868,377 ("the '377 patent"), U.S. Patent No. 8,920,332 ("the '332 patent"), and U.S. Patent No, 9,089,760 ("the '760 patent").

## II.   LEGAL STANDARD

"Granting a motion to stay is within the sound discretion of the Court."  *Fuller v. Amerigas Propane, Inc.*, No. 09-2493, 2009 WL 2390358, at *1 (N.D. Cal. Aug. 3, 2009).  The power to stay is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Id.* (quoting *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (internal quotation marks omitted)).

"In considering whether a stay is appropriate, the Court weighs three factors: [1] the possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay."  *See Gustavson v. Mars, Inc.*, Case No. 13-cv-04537-LHK, 2014 WL 6986421, at *2 (N.D. Cal. Dec. 10, 2014) (internal quotation marks and citation omitted) (brackets in original).  These factors are drawn from the Supreme Court's decision in *Landis v. North American Co.*, 299 U.S. 248 (1936).  *Id*.  "If there is even a fair possibility that a stay will work damage to some one else, the stay may be inappropriate absent a showing by the moving party of hardship or inequity."  *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d

2

1059, 1066 (9th Cir. 2007) (internal quotation marks omitted) (citing *Landis*, 299 U.S. at 255).

## III. DISCUSSION

### A. Possible Damage from Granting Stay

The Court first considers the possible damage that could arise from granting the stay. Fitbit argues that a stay would delay the resolution of Fitbit's claim for at least another one and a half to two and a half years, causing substantial harm, such as fading witnesses' memories and lost evidence. Opp. 6-7. Fitbit further asserts that Jawbone is experiencing deteriorating financial health and may become insolvent. *Id*. at 7. Jawbone argues that whatever delay from a stay would be caused by Fitbit's own doing, specifically because of its "strategy of filing multiple patent cases in courts on opposite sides of the country." Mot. 8-9. According to Jawbone, the present case is also at an early procedural posture so that deadlines can be extended without case management issues. *Id.* at 9. The Court does not find persuasive Fitbit's argument that Jawbone will not be able to pay a judgment based on certain news articles on Jawbone's financial situation. Nevertheless, the Court finds that Fitbit may suffer some harm because of the delay in the resolution of this case. Accordingly, this factor does not weigh strongly in favor of a stay.

### B. Possible Hardship or Inequity from Denying Stay

The Court next considers the possible damage that could arise from going forward. *CMAX*, 300 F.2d at 268. Jawbone contends that if the stay is denied, it would "be required to simultaneously fight a three-front war, involving 3 patents in the ITC, 3 patents in this case, and 3 patents in [another case in this District]." Mot. 10. According to Fitbit, Jawbone created its own multi-front battle because it has also separately asserted its own patents against Fitbit in different venues. Opp. 8. Fitbit also argued at the hearing that the parties have agreed to share discovery across all of the cases. *Id.* at 8. As such, Fitbit claims that this agreement should mitigate any duplication or conflict. *Id.*

Although this patent case would impose additional burden on both parties, the Court notes that the parties are already facing many other pending disputes. In light of the history of litigation between the parties and the cross-use agreement the parties have, the Court does not find this factor determinative as to whether a stay should be granted.

3

### C. Orderly Course of Justice

Turning now to the third interest–whether a stay will complicate or simplify the issues, Jawbone makes its main argument for stay based on this factor. Jawbone asserts that the ITC Action and the present case are similar enough that the Court should stay this case in the interest of efficiency and fairness. Mot. 6. Jawbone makes the following points in support of this argument. First, Fitbit designated the present case (before its transfer from the district of Delaware) as related to the other Delaware case, *Fitbit v. Jawbone* (D. Del. 15-cv-0990), which involved the same patents as the ones in the ITC Action. *Id.* Second, the accused products are in the same product line so there will be overlapping non-inventor witnesses. Third, the '760 patent is a parent patent of the '543 patent in this case, and they share the same specification, share the same two inventors, and will have similarities with respect to what is claimed. *Id.* at 6-7. Additionally, other patents implicate similar subject matter, have some overlapping inventorship, and were prosecuted by the same firm. *Id.* at 7.

Fitbit claims that Jawbone wrongly assumes that there would be judicial efficiency if a stay were to be granted. Fitbit contends that its designation of *Fitbit v. Jawbone* (D. Del. 15-cv-0990) as related to this case is not relevant to this motion. Opp. 3. This is because, Fitbit argues, nothing suggests that the once the stay is lifted in the Delaware case, the case will be transferred and consolidated with the present case. *Id.* Fitbit then concludes that this alleged hypothetical judicial efficiency may never come to pass. *Id.* More importantly, Fitbit disagrees with Jawbone that the patents and the issues are substantially similar and argues that the asserted claims are not similar despite the familial relationship. *Id.* at 4-5.

After a preliminary examination of the patent claims, the Court finds that the patent claims asserted here are not the same as those in the ITC Action. The Court acknowledges that the '543 patent is a continuation-in-part of the '760 patent, and the patents share the same specification. The '812 patent asserted here also has "activity metric" as a claim limitation, similar to the limitation of "activity point," required by the '377 patent claims. Nevertheless, it is uncertain that the degree of similarity rises to a level that warrants a stay in the interest of judicial efficiency. The Court finds more dispositive the fact that the ITC action resolution is imminent so a stay in

4

this action would not significantly impact judicial efficiency, if at all.  Based on publicly available information, the administrative law judge in the ITC Action is expected to issue an initial determination on December 7, 2016 and has set a target date of completing the investigation by April 7, 2017.  ITC Action (Procedural History).  In light of the rapidly-approaching resolution of the ITC action, as well as the parties' agreement to share discovery material across different federal actions and their ITC actions, the Court finds that allowing the case to proceed would not significantly affect judicial efficiencies.  Accordingly, the Court finds that the third factor fails to weigh in favor of a stay.

**IV.   ORDER**

The Court does not find the *Landis* factors weigh in favor of a stay.  Although Fitbit might suffer some harm if the case is stayed, both parties would have to bear the burden of litigating this case if the case were to proceed.  Hence, the Court does not find the first two *Landis* factors determinative as to whether to grant a stay.  Further, the Court is not persuaded that staying this action would simplify issues or questions of law because the patent claims are not identical.  Given the parties' agreement sharing discovery materials, duplicative efforts can be minimized.  Most importantly, the benefit of a stay is questionable because the ITC resolution is fast approaching.  For the foregoing reasons, the Court DENIES Jawbone's motion to stay.

Dated: October 31, 2016

_____
BETH LABSON FREEMAN
United States District Judge